**Charles EVANS, Plaintiff,**

v.

**Walter FOGG, Thomas A. Davis, Ronnie Taylor, Defendants.**

**No. 78 Civ. 5363.**

United States District Court,
S. D. New York.

March 16, 1979.

Charles Evans, pro se.

Robert Abrams, Atty. Gen. of N.Y., New York City (Robert A. Forte, Asst. Atty. Gen., New York City, of counsel), for defendant.

LASKER, District Judge.

Charles Evans, a state prisoner, sues under 42 U.S.C. § 1983 for damages and injunctive and declaratory relief, alleging violations of his constitutional rights by prison officials at the Eastern Correctional Facility. The defendants move under Rule 12(c), Fed.R.Civ.P., for judgment on the pleadings.

Evans' claim arises from the following series of events. After two altercations with a fellow inmate, Evans was notified that he would be transferred to a different prison. Fearful that, if transferred, he would be unable to appear at an upcoming hearing on his habeas corpus petition, Evans barricaded himself inside his cell and refused to come out until assured that the transfer would be postponed until after the hearing. Evans was then placed in segregation and charged with interference with an officer in the performance of his duty. He describes the cell in which he was confined as "filthy", containing "mice feces, dust and miscellaneous garbage". (Complaint, pp. 3A–3B) Despite his request to be allowed to clean the cell immediately, Evans states that he was required to wait 24 hours until given a broom with which to sweep out the assorted dirt.

Evans also alleges that he had repeated difficulty in securing law books which he needed to prepare for his habeas hearing. He states that, on one occasion, he requested Officer Taylor, one of the defendants, to supply him with books but that the request was ignored for two days until Evans was able to contact Taylor's superior officer who ordered that the books be sent to him. In response to further requests, Evans stated that he was told by Officer Taylor that the library refused to send any more books. Finally, in frustration, Evans broke his toilet. Following this outburst he received his books but, he complains, was forced to remain in a flooded cell for two days until he was taken before a Superintendent's Board which discharged him from keeplock with the punishment of time served. As a result of the hearing, a misconduct report was entered on Evans' record.

Evans argues that the entire chain of events leading up to the misconduct report was the result of his exercise of his right under the due process clause of the Fourteenth Amendment to have access to the courts and that he cannot be punished for asserting a constitutional right. He also contends that the denial of access to the law library violated his right to due process and that the conditions of his confinement in keeplock constituted cruel and unusual punishment in violation of the Eighth Amendment.

 Although if the conditions described by Evans are true, they compel the sympathy of the court, they cannot be said to rise to the magnitude of constitutional violations; and as to state prisoners this court has jurisdiction only as to constitutional violations. To be kept in a refuse-strewn cell for 24 hours and in a flooded cell (a condition resulting from Evans' own acts) for two days is a rough experience, but, since neither condition persisted for more than a limited period of time, it cannot be said that the condition amounted to cruel and unusual punishment. Claims of cruel and unusual punishment have been sustained only on the basis of allegations of far more severe treatment. See *LaReau v. MacDougall,* 473 F.2d 974, 977 (2d Cir. 1972) (prisoner alleged to have been kept in unlit "strip cell" for five days without hygienic facilities, writing matter or possibility of exercise); *Wright v. McMann,* 387 F.2d 519, 521–22 (2d Cir. 1967) (prisoner alleged to

have been kept in solitary confinement for eleven days without clothes, hygienic facilities, heat or furniture.) Similarly, there is no apparent excuse for Officer Taylor's alleged refusal to supply Evans with law books but, since Evans did receive the books from other officers within a matter of days, he was not deprived of the tools necessary to prepare for his legal proceeding.

Finally, we do not agree with Evans that he was placed in keeplock in retaliation for the exercise of his right to go to court. No attempt was made to prevent Evans from appearing at his habeas hearing. Indeed, according to Evans' own account, the implementation of the transfer order was postponed expressly to allow Evans to attend the hearing. In contrast, the cases relied on by Evans in this regard involved clear threats to bar prisoners from asserting their legal rights. See *Corby v. Conboy,* 457 F.2d 251, 253 (2d Cir. 1972) (prisoner allegedly told by prison authorities that punitive segregation would continue until prisoner ceased filing lawsuits), *Sostre v. McGinnis,* 442 F.2d 178, 189 (2d Cir. 1971) (prisoner found to have been committed to segregation to squelch threat to sue warden over censorship of the prisoner's mail). Here, the complaint indicates that Evans was placed in segregation as punishment for barricading himself in his cell. Although Evans characterizes his action as "peaceful resistance", it would have been reasonable, in light of the disciplinary problems which prisons face, for the officials at Eastern to have felt it necessary to punish Evans for resisting an order in this manner. See *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir. 1973).[1]

For the reasons stated, the motion for judgment on the pleadings is granted.

It is so ordered.

---

[1] "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights. In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."