John **RUSSELL**, Plaintiff,

v.

Herman **ENSER**, Individually and in his official capacity as Chief of Police and Chief Administrator of Horry Co. Jail, Conway, S. C.; Dale Cousy, Individually and in his official capacity as Jailer of Horry Co. Jail; Gordon Hendrex, Individually and in his official capacity as Jailer of Horry Co. Jail, Conway, S. C., Defendants.

Civ. A. No. 78–1167.

United States District Court, D. South Carolina, Columbia Division.

July 6, 1979.

---

1. In light of our decision today, the court need not consider the issues raised in Pascal's remaining pretrial motions.

John Russell, pro se.

John P. Henry, County Atty., Conway, S. C., for defendants.

## ORDER

HEMPHILL, District Judge.

This § 1983 case is before the court on a motion for summary judgment for the defendants.[1] The plaintiff, who is proceeding *pro se*,[2] has availed himself of the opportunity to respond to the affidavits which are the basis for the defendants' motion.[3] The plaintiff has also served two sets of interrogatories which have been answered, but such discovery sheds no new light on the facts revealed by the pleadings and affidavits on file.

The complaint in this case was filed on July 14, 1978 after the court by Order filed June 19, 1978 granted plaintiff and another prisoner leave to submit amended complaints to clarify certain factual allegations contained in an earlier complaint submitted by them.[4] Because of confusion in the handling of the summons and complaint, the defendants in this case did not file a timely response, and the Clerk entered a default on August 21, 1978. After a properly supported motion to set aside the entry of default was filed by the defendants, the court set the default aside by Order filed herein on September 8, 1978. See *Watson v. Herndon*, 599 F.2d 1050, (4th Cir., 1979), and cases cited therein. Thereafter, the motion now before the court was filed.

The plaintiff requests only "punitive" damages from three defendants, who are Herman Enser (Enzor), Dale Cousy (Causey), and Gordon Hendrex (James A. Hen-

1. The motion is described as a motion for judgment on the pleadings, but it refers to Rule 12, and is supported by affidavits. The defendants have also answered the complaint.

2. The plaintiff has requested the appointment of counsel, but this case is not one having complex issues, so no such appointment is justified. *Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975). See also *Williams v. Leeke*, 584 F.2d 1336, at 1339 (4th Cir. 1978), *cert. denied*, 442 U.S. 911, 99 S.Ct. 2825, 61 L.Ed.2d 276 (1979).

3. The plaintiff has been furnished with a full explanation of his right to file counteraffidavits, and of the consequences of a failure to show the existence of a justiciable issue, as required by *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

4. *John Russell and Tommy Allen v. James Brown, et al.*, No. M–5–131. A copy of the Order filed on June 19, 1978 is hereby made a part of the record in this case. Allen has not submitted another complaint for consideration under 28 U.S.C. § 1915, but one James F. Johnson has done so. The complaint in *Johnson v. Enser, et al.*, Civil Action No. 78–1533, was filed six weeks after Russell's complaint was filed, and Johnson concedes that his complaint has been copied from Russell's. However, some of Russell's claims have been deleted in Johnson's pleading, and Johnson's case will be decided in a separate Order.

As this court observed in its Order filed in No. M–5–131, Russell's complaint bears a strong resemblance to a complaint filed by another prisoner in early 1977 about the conditions in the Anderson County Jail. That complaint was dismissed for failure to state a constitutional claim on April 14, 1977, but the Court of Appeals remanded the case for a hearing on certain alleged issues in *Mattison v. Cooley*, No. 77–2029 (November 17, 1977). After two days of hearings, the prisoner himself asked for a dismissal with prejudice on the ground that he did not want to destroy his "credibility" in the Court of Appeals! The evidence that was produced in the hearings conclusively revealed that Mattison's complaint was wholly unfounded on fact, a deficiency the prisoner was aware of from the very beginning. However, he obtained a hearing, which is apparently the only end he had in mind from the outset of his case.

drick). Enzor is Chief of the Horry County Police, and Causey and Hendrick were jailers at the Horry County Jail at the times alleged in the complaint. Plaintiff was a convicted prisoner committed to the South Carolina Department of Corrections when he was transferred to the Horry County Jail on April 18, 1978 for a hearing in Horry County in a post–conviction case then on file there.[5] Plaintiff alleges he was in the Horry County Jail for eight days, and he is requesting damages for what he alleges to be violations of his constitutional rights while he was there. Contrary to the clear instructions set out in the Order granting him leave to resubmit a complaint concerning conditions at the jail during his short stay in Horry County, plaintiff has failed to allege the personal involvement of a specific defendant in every alleged violation recited in his complaint, and he has also failed to comply with an instruction that he should describe damages to him that were caused by the conditions of which he complains.[6]

Although there is some redundancy in his complaint, Russell has alleged the following claims.[7]

(1) Denied access to the courts because of the denial of a right to telephone the attorney who represented him in the post–conviction case.

(2) Denied access to courts because, when he attempted to write his attorney after being refused permission to telephone him, defendant Causey refused to mail the letter unless it was delivered for mailing in an unsealed envelope so as to facilitate inspection and censorship of the letter.

(3) Denied water to drink for four days.

(4) Denied canteen privileges after three days confinement in the jail.

(5) Denied all bedding except for a soiled mattress.

(6) Denied a soft diet prescribed by SCDC physicians for an ulcer.

(7) Denied medication prescribed by SCDC physicians on three occasions, by Causey on April 18 and April 22, and by Enzor on an undisclosed date.

(8) Denied a shower bath for entire period spent in the jail.

(9) Absence of medical facilities at jail.

(10) No fresh air circulation in jail.

(11) Forced to sleep in the cold because air conditioning operated twenty–four hours a day at the jail.

(12) The visiting window at the jail was too small.

The defendants in their answer generally deny all material averments of the complaint. Defendants allege that Russell was confined in the maximum security portion of the jail because of his record of prior escapes, which history necessitated the employment of stricter security measures as to him. Defendants deny, however, that the conditions of his confinement at the jail violated Russell's constitutional rights. In his reply, plaintiff incorporates certain color photographs which purportedly depict scenes in the Horry County Jail,[8] and three

---

**5.** See n. 3, p. 2, of Order in No. M–5–131. Russell has a history of prison escapes. The crime for which he was convicted in Horry County occurred shortly after he escaped from a North Carolina prison. His attempt to collaterally attack that conviction under 28 U.S.C. § 2254 was dismissed on July 7, 1977 in *Russell v. Martin*, Civil Action No. 77–687.

**6.** These instructions were stated on pages 2, 3, and 6 of the Order in No. M–5–131. Plaintiff contends that a denial of medication and the unavailability of a special diet prescribed for him in prison caused him to suffer from cramps, headaches, nausea, and insomnia, but he does not contend that his health has been impaired in any way.

**7.** No effort is made to follow the numbering sequence employed by Russell in the complaint.

**8.** E-1 is a picture of a lavatory which lacks a faucet valve to turn on water. E–2 depicts "mattress in Cell Block." E–3 depicts a shower stall encrusted with rust in the bottom, and E-4 shows rust on a wall of the stall. E–5 depicts a barred visiting window covered with steel mesh, and containing a notation by plaintiff that "all inmates in this Cell Block must crowd up to this small place and have one hour visi[t] all at same time." E–6 is said to be a picture of a cell block, but it is not possible to see details of the cell because the photograph was taken through a barred door.

affidavits to substantiate his claim that defendant Causey refused to mail plaintiff's letter to his attorney unless the letter was unsealed.

The motion of the defendants was filed on November 1, 1978. Attached to the motion are affidavits by James Arnold Hendrick, Jennings Dale Causey, and Herman Enzor, the three defendants.

Hendrick avers that he is one of the jailers at the Horry County Jail, and he denies that prisoners confined in that institution awaiting post–conviction hearings are treated differently than other prisoners. He alleges that all cells at the jail contain both drinking water and shower facilities which are maintained in workable and sanitary condition. He states that if any of the plumbing in plaintiff's cell was inoperable at the time plaintiff was there, the plaintiff never informed the affiant of such malfunction. He further denies that any jail officials censor mail except for incoming packages for prisoners. He further states that no one brought to his attention any special medical needs on behalf of the plaintiff, and he avers that if such medical needs had been called to his attention, they would have been provided. He avers that all attorneys are afforded access to their clients at the jail upon request, and that plaintiff's attorney had such access to plaintiff. Hendrick also avers that prisoners in the Horry County Jail receive clean mattress covers upon admission, and blankets upon request during cool weather. He concludes that if the jail was too cold for the plaintiff while he was there, the plaintiff did not inform him of his discomfort, nor did he ask for a blanket.

Causey, who is also a jailer, states that no one called to his attention any need by the plaintiff for medical attention. He repeats the averments contained in Hendrick's affidavit concerning the availability of drinking water and bathing facilities at the Horry County Jail. He states that plaintiff did receive canteen privileges while in Horry County, and corroborates that the jail has no policy to censor any prisoner's mail. He states that prisoners are afforded free use of the mails, and that attorneys have unrestricted access to their clients, either during or after visiting hours there.[9]

Defendant Enzor substantially repeats the averments contained in the affidavits of his two codefendants, and adds an averment that the visiting facilities at the Horry County Jail are sufficient to afford adequate contact between a prisoner and his visitor.

A *Roseboro* [*Roseboro v. Garrison*, 528 F.2d 309, 4th Cir., 1975] order was filed on November 2, 1978, and on December 1, 1978, the plaintiff submitted his response ("motion to set aside judgment on pleading"). Attached to the response are affidavits by Robert Quinn, Tommy Allen, Foster Stafford, and John Russell. Later, the affidavit of Lucile Johnson was filed on January 25, 1979, she being the mother of another prisoner suing about the conditions of the Horry County Jail (James F. Johnson, C/A No. 78–1533).

Quinn avers in his affidavit that he was at the Horry County Jail for several days after April 18, 1978, and that defendant Enzor was informed by the plaintiff that the cells contained no sheets, blankets, or mattress covers, nor drinking water or run-

---

Four of the same photographs (E–1, E–3, E–4, and E–5) are attached to plaintiff's memorandum received on December 1, 1978.

**9.** When the defendants moved to set aside the default in this case, they filed the affidavit of attorney Irby E. Walker, Jr., dated August 25, 1978. Walker avers that he represented the plaintiff in his Horry County post–conviction case, and that he was afforded access to Russell at all times while Russell was in the jail in Horry County. He adds that he had sufficient

communication with Russell to enable him to adequately present Russell's post–conviction case. Therefore, Russell's claims that the denial of a phone call to his attorney, and one isolated failure to mail a letter (even if true), deprived him of access to counsel and to the court are revealed to be without sufficient merit to justify a hearing. Compare, *Douglas v. Muncy*, 570 F.2d 499, 501 (4th Cir. 1978); *Hall v. Southhampton Center*, 601 F.2d 580 (4th Cir., 1979); *Mattison v. Cooley, supra.*

ning water in which to bathe. No steps were taken to remedy the defects, according to Quinn, who contends that he went without drinking water for four days. Quinn also corroborates plaintiff's allegation about Causey's failure to mail a letter to plaintiff's attorney, unless the letter could be opened, and also the incident concerning the refusal of Causey to let the plaintiff telephone his attorney on a Sunday.

Tommy Allen avers that he was also in the Horry County Jail with plaintiff. He corroborates the averments contained in Quinn's affidavit. The affidavit of Foster Stafford also substantially corroborates the affidavits of Quinn and Allen. The affidavit of John Russell corroborates some of the allegations of the complaint. The affidavit of Lucile Johnson avers that she spoke with defendant Enzor during April of 1978 to request that she be permitted to bring sheets, blankets and pillowcases to the plaintiff and to her son, James F. Johnson. She avers that Enzor disapproved her request "because such items could be used for the prisoners to hurt thereselfs [sic] with." She states that she is personally aware of the fact that no drinking water was available in the cell block, and that the prisoners had to drink water out of a plastic jug in which she saw contamination present in the form of an insect. She also criticizes the facilities at the visiting window at the Horry County Jail.

▮▮ Plaintiff's claims that he was denied access to the courts have been shown to be lacking in merit. His attorney has verified that he had necessary access to plaintiff, and no prisoner has a right to telephone his attorney at his own whim or caprice. The claim that plaintiff had no

drinking water is difficult to credit in the face of the defendants' affidavits. Moreover, the Johnson affidavit reveals the existence of drinking water in the plaintiff's cell area, and even if her observation of an insect in a jug of water is credited, there is no reason apparent why the jug could not have been emptied, washed out, and replaced with fresh water. This could have been obtained from the shower, if that outlet was the only source.[10] The claim that plaintiff did not have access to a canteen throughout his stay at the jail is not a constitutional issue under 42 U.S.C. § 1983, and the alleged unavailability of bed linen falls into the same category. While the conditions in the jail were most probably unpleasant, at best, the plaintiff's allegations do not represent cruel and unusual punishment as proscribed by the Eighth Amendment.[11] While the lack of a shower would be serious over a sustained period of time,[12] the absence of a bath for one week (if true) for a prisoner in transient status would not present a constitutional issue for trial. Plaintiff's claim that no medical facilities were available at Horry County fails to specify a justiciable controversy under § 1983, for he does not allege that he sought access to a doctor while he was there. His only claim about medical care relates to an alleged failure of the defendants to dispense medication allegedly available at the jail after transportation from the Department of Corrections, which will be discussed separately. The claims concerning the lack of ventilation, the use of air–conditioning, and the size of the area through which visitors had to speak, without any showing that plaintiff has been damaged by such design or operational deficiencies in the jail, do not rise to the level of constitutional

10. Plaintiff concedes that he was served coffee and tea with his meals at the jail.

11. A prisoner at the South Carolina Department of Corrections complained of the conditions in "E" Tier at Central Institution in *Patterson v. Leeke*, No. 74–2091 (4th Cir., February 18, 1976). He singled out dirty linen used by prior cell occupants, poor ventilation, the lack of a shower for a week, and infrequent running water in his cell. The Court of Ap-

peals observed that such "undoubtedly unpleasant" conditions were not so inhumane as to support his claim of cruel and unusual punishment. Unlike the plaintiff, who was only a transient at Horry County Jail, the prisoner in *Patterson v. Leeke* was permanently confined on "E" Tier.

12. Cf. *Sweet v. South Carolina Department of Corrections*, 529 F.2d 854 (4th Cir. 1975).

claims.[13] It would be folly to grant the plaintiff, a recognizable escape risk, a trip to a United States Court House for a hearing on such weak and unsupported allegations as his claims (1)–(5) and (8)–(12) as herein itemized.[14]

■ There remain for disposition plaintiff's allegations that he was denied medication and a soft diet prescribed by prison doctors while he was in the Horry County Jail during 1978. It should be observed again that Russell has not alleged that his physical condition or his health has been impaired to any extent by the claimed denial of prescription drugs and a soft diet for his ulcer. He alleges only that he suffered pain and discomfort because of the lapse in receiving medication and the diet, and he is unable to state affirmatively that SCDC officials informed Horry County Jail personnel of any special medical needs for him when he was transferred there for a short stay. In his complaint, plaintiff alleges that Chief Johnson of the SCDC told him before he was sent to Horry County for his post–conviction hearing that arrangements would be made for his medication and diet to accompany him. Plaintiff concedes that he does not know whether these arrangements were in fact made, and all defendants have denied knowledge of any special medical needs for the plaintiff. Under the circumstances, unless plaintiff can show that defendants were in receipt of prescription drugs and a prescribed diet for him, he could not prove a § 1983 claim against the defendants he has sued for denying him necessary medical care.[15]

The sick call notes submitted by plaintiff with his reply contain certain medical notations made during 1976 and early 1977. These notes reflect that he reported to medical personnel on February 12, 1976 that he had experienced a bleeding ulcer in 1973. He received medications that were apparently prescribed for that condition (Librax and Gelusil, the latter being a common medication sold over the counter), and these medications were renewed once more on March 1, 1976, but not thereafter, according to the exhibit, which reflects entries to February 7, 1977. Plaintiff expressed a wide range of complaints, but an ulcer was only mentioned in the one entry noted above.

The court has obtained for filing and review [16] the sick call notes for the plaintiff for the months of March, April, and May of 1978. These entries cover the span of time during which plaintiff was sent to Horry County from the Department of Corrections for the period of eight days commencing April 18, 1978. In addition, a broad summary of plaintiff's treatment by Dr. Reed P. Johnson, a psychiatrist, has been reviewed. Dr. Johnson's statement of June 26, 1979 describes the medication prescribed for plaintiff during 1978 for plaintiff's medical complaints, expressed by him to be tension and "vague" gastro–intestinal symptoms and back pain attributed by plaintiff to a 1974 injury. According to Dr. Johnson's summary, plaintiff was given Milpath 400 for tension and for stomach complaints, and Tegretal for headaches.

The sick call notes contain specific entries that supply the particulars upon which Dr. Johnson's summary is based. The entries

---

13. Where, as in this case, a request for injunctive relief is moot because Russell is not confined in Horry County, and there is no possibility of proving damages; see *Carter v. Gangwer*, 577 F.2d 733 (4th Cir., 1978), [a prisoner must show physical, pecuniary, or psychological damage in a civil rights case]; the unsupportable claims of constitutional violations are dismissible. *Carroll v. Turner*, No. 75–1666 (4th Cir., August 1, 1977); *Boxdale v. Muncy*, 577 F.2d 732 (4th Cir. 1978); *Dorris v. Department of Corrections*, 598 F.2d 614 (4th Cir., 1979).

14. Viewing all such claims together, rather than as isolated contentions, as required by

*Mattison v. Cooley, supra*, the claims do not justify an evidentiary hearing.

15. To prevail in such claim, plaintiff would have to show a denial of medical care for a serious medical need, *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), not just elective treatment. *Kersh v. Bounds*, 501 F.2d 585 (4th Cir. 1974), *cert. denied*, 420 U.S. 925, 95 S.Ct. 1120, 43 L.Ed.2d 394 (1975).

16. A copy of these records was mailed to plaintiff after filing.

for March 2, March 8, March 15, March 27, and April 12 reflect plaintiff's medical complaints before he was temporarily transferred to Horry County. Later entries for May 4, May 29, June 7, and June 16 provide the continuity of his complaints following his return to the Department of Corrections after his post–conviction case required his presence in Horry County. It is an accurate summarization of these medical entries to state that the record does not reflect that the plaintiff's physical condition was such that he had "serious medical needs" of the type contemplated by the United States Supreme Court in *Estelle v. Gamble, supra,* 429 U.S. at 106, 97 S.Ct. at 292. Mr. Justice Marshall for the court there said, "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." It is true, as plaintiff has alleged, that plaintiff was receiving prescribed medication on April 18, 1978 when he was sent to Horry County, but there is no support in the medical entries for a conclusion that the unavailability of the medicine caused him to suffer any lasting damage to his health. Undoubtedly, plaintiff may have endured pain that might have been lessened or eliminated altogether by his medications, but he has not shown that such pain was consciously inflicted by the defendants solely to punish him. At most, the record supports only an inference that Department of Corrections personnel failed to send along plaintiff's medication and diet when he was sent to Horry County, along with other prisoners escorted there for court appearances.

■ The sick call notes reflect that plaintiff complained of headaches on March 2, 1978. Dr. Skinner prescribed Fiogesic for

seven days. Plaintiff refused to take this medication, and the entry for March 8 states, in part: "Demands Darvocet or Wygesic." That entry also notes that plaintiff threatened to file a civil action if his demand for medication to relieve his headaches was not met.[17] Dr. Johnson prescribed Tegretal for the headaches. Apparently plaintiff had earlier received a prescription for Milpath (400 mg.), for the entry for March 15, 1978 reveals that he "demands diet card for ulcers and *one more* Milpath 400 for bedtime." The entry, initialled by "GLT," a medical technician, records that the "demands" would be discussed with Dr. Joshi and Dr. Johnson. Another entry for that date records that Dr. Johnson prescribed "Bland ulcer diet # 3" for a period of thirty days, but there is no indication that plaintiff's demand for the Milpath was honored. Plaintiff had a tooth removed on March 27, 1978, and the final entry before he left for his court date in Horry County reflects that on April 12, 1978, he had "no complaints."

Following plaintiff's return to Central Correctional Institution from Horry County, the first medical record entry was made on May 4 or May 5, 1978. It records that the bland diet was renewed, and reflects that he was then taking Milpath and Tegretal. When the Milpath was prescribed is not shown, however. Entries for May 29 and June 7 relate to a complaint of a sore throat, for which an anti–biotic was prescribed (Sumycin for seven days). The throat condition had been cleared up on June 7, and no other complaints were entered. The entry for June 16, 1978 records that plaintiff requested a physical examination because he had not received one in a long time. The tentative examination by a medical technician showed no unusual

**17.** Darvocet and Wygesic are both narcotic derivatives. It is now a common occurrence to see a case in which a confined prisoner sues, or threatens to sue, a prison medical official for not prescribing a narcotic drug, or some other compound preferred by the prisoner over what a prison doctor prescribes for him. Such cases are not valid claims under 42 U.S.C. § 1983, however, for mere disagreement by a prisoner with treatment prescribed for him by a physician, without other factors not apparent here, does not represent a constitutional claim. Our Court of Appeals has so held in innumerable cases. See, *e. g., Russell v. Sheffer,* 528 F.2d 318 (4th Cir., 1975), cited with implied approval in *Estelle v. Gamble* (as to its principal holding that medical malpractice is not a constitutional issue).

symptoms of disease or other abnormalities. The entry states, as to an ulcer:

"The only symptoms he has now is occasional epigastric burning & stomach pains relieved by antacids and medication. He states he has ulcers confirmed by upper GI series, and has had bleeding in past—none past year or two . . . "

The entry records he was then still taking the Milpath and the Tegretal. Dr. Skinner authorized the addition of Gelusil liquid. Tests are recorded as negative as to symptoms of disorder, and the plaintiff, according to the entry, "Denies Melena now—[Bowel movements] have been soft and brown in color."

It is obvious from the medical entries that plaintiff cannot prove damages for any deterioration of his health because of the alleged lapse of one week in his bland diet and the medication he was taking when he was sent to Horry County. Since plaintiff has failed to demonstrate that he is entitled to recover damages, the joinder as a defendant of any person employed by the Department of Corrections who may have neglected to send his diet and medication (if any, at that time) to Horry County on April 18, 1978 would not be appropriate.[18]

■ The Constitution does not mandate that prisoners must have available to them all forms of non–emergency medical care at all times. In addition to his failure to show that defendants deliberately and intentionally withheld from him necessary medical treatment for a serious medical need, plaintiff has also failed to show that he has been caused to suffer any serious consequences because of the brief lapse in his receipt of a bland diet and medication.[19] Any pain plaintiff had to endure was the result of possible negligence in the failure by Department of Corrections personnel to send the diet and medication to Horry County, but pain caused by mere negligence is not deliberate indifference to a serious medical need.[20]

■ It has been observed earlier that any request by plaintiff for injunctive relief is now moot. In such an instance, where a claim for damages is unsupported, a dismissal of a § 1983 case is appropriate.[21] Plaintiff has failed to show the existence of any material issue as to any relevant facts in this case,[22] and for this reason, the de-

---

18. *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir. 1978), *cert. denied*, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978).

19. Any claim concerning a denial of medication must be evaluated on the basis of a three–element test, (1) the availability of the medication, (2) the seriousness of the plaintiff's need for it, and (3) the consequences of the denial insofar as medical effects have occurred because of the interruption. *Cassidy v. Superintendent*, 529 F.2d 514 (4th Cir., September 5, 1975); *Jackson v. Superintendent*, No. 75–1035 (4th Cir., February 4, 1977). Plaintiff has not shown that his needs were made known to or available to the Horry County Jail when he was sent there from the Department of Corrections. The medical records the court has reviewed reveal that plaintiff's need was not serious, and that he has not suffered any significant adverse effects because of the unavailability of the diet and medication for the eight days in issue here. If it must be conceded that plaintiff experienced some pain that can be attributed to the lapse in his diet and medication, such pain is not compensable under § 1983 unless he can show it was deliberately inflicted in a wanton disregard for his rights. No such showing appears in this record.

20. *Rice v. White*, 571 F.2d 577 (4th Cir., 1978).

21. *Carroll v. Turner*, No. 75 1666 (4th Cir., August 1, 1977); *Boxdale v. Muncy*, 577 F.2d 732 (4th Cir., 1978); *Dorris v. Department of Corrections*, 598 F.2d 614, (4th Cir., 1979).

22. Because of plaintiff's escape record, the defendants were justified in keeping him in the maximum security area of the jail. *Cf. Smith v. Winston*, No. 75–1771 (May 19, 1976). His comparatively short stay in Horry County also has a certain amount of significance; even though the record reveals that conditions there were less than ideal for a jail housing long–term convicts, the United States Supreme Court placed emphasis on the short–term confinement of the class of plaintiffs in *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), which involved untried detainees. Plaintiff is not a pretrial detainee, of course, but his short stay in Horry County was far less than the time for confinement in *Bell v. Wolfish*. Were Russell to be permanently transferred to Horry County, the considerations involved here would be changed, obviously.

fendants are entitled to summary judgment, which the Clerk will enter.

AND IT IS SO ORDERED.