Winston **HOLLOWAY,**
**Plaintiff-Appellant,**

v.

Robert **GUNNELL, Warden, FCI, et al.,**
**Defendants-Appellees.**

No. 81–2344
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Sept. 9, 1982.

---

Claude R. Treece (court appointed not under Act), Houston, Tex., for plaintiff-appellant.

Before CLARK, Chief Judge, REAVLEY and RANDALL, Circuit Judges.

REAVLEY, Circuit Judge:

This is a *pro se* action by a federal prisoner against several officers of the federal

prison in Texarkana, Texas. Plaintiff claims that during a brief stay in the Texarkana prison these officers (1) subjected him to cruel and unusual punishment, (2) denied him access to the courts, and (3) placed him in disciplinary confinement without due process of law. The district court permitted plaintiff to file his complaint *in forma pauperis*, but it dismissed the complaint prior to service of process on the defendants. The defendants have never appeared in this action and have not filed a brief in this appeal.

The district court based its dismissal on the grounds (1) that plaintiff was making some of his allegations in an improper venue; (2) that plaintiff failed to exhaust his administrative remedies; (3) that the complaint did not state claims of constitutional dimension. We conclude that the district court's dismissal on the first two grounds was premature. We also conclude that dismissal of plaintiff's claims of "disciplinary confinement without due process" and "denial of access to the courts" was premature. We agree with the district court, however, that plaintiff's claim of cruel and unusual punishment is frivolous. Therefore, we affirm the dismissal of the Eighth Amendment claim, and we reverse and remand for further proceedings on plaintiff's other two claims.[1]

### I. *The Complaint—A Brief Overview*

We assume that the plaintiff's allegations are true. He is an inmate in a federal prison in Terre Haute, Indiana. In August of 1980, he was transferred for about two months to the federal prison in Texarkana so that he could attend court proceedings. He claims that on one occasion he has been, and will in the future be, transferred again for further court proceedings.

His complaint concerns allegedly unconstitutional conditions on the bus that takes him from Terre Haute to Texarkana, and in the prison at Texarkana. He seeks damages as well as declaratory and injunctive relief against the defendant prison officials.

### II. *Rules Governing Dismissal of the Complaint*

■ The handling of *in forma pauperis* complaints is governed by 28 U.S.C. § 1915 and the rules established by this court in *Watson v. Ault*, 525 F.2d 886 (5th Cir. 1976). Generally, a pauper's complaint cannot be dismissed prior to service of process unless "frivolous or malicious" within the meaning of 28 U.S.C. § 1915(d). *See Watson v. Ault*, 525 F.2d at 892–93. While the question of "frivolousness" usually concerns the merits of the complaint, we assume *arguendo* that a pauper's complaint may also be dismissed prior to service of process for lack of venue or failure to exhaust administrative remedies if the deficiency is so clear that it renders plaintiff's attempt to prosecute the suit frivolous.[2] We conclude, however, that the district court's conclusions concerning venue and exhaustion were in error.

### III. *Venue*

The district court held that venue was improper for plaintiff's claims concerning occurrences on his bus rides. The court believed that plaintiff's only possible damage remedy was under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.* Under the FTCA's venue provisions an action "may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b). Be-

---

**1.** The district court entered an order dismissing the plaintiff's notice of appeal as untimely because it was not filed within 30 days after judgment. This ruling was in error because Rule 4(a)(1) of the Federal Rules of Appellate Procedure allows 60 days to appeal "if the United States or an officer ... thereof is a party."

**2.** The question is not without difficulty. Neither venue nor exhaustion of administrative remedies is a jurisdictional requirement; either requirement can be waived by the defendant. *See* 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3826, at 166–67 (1976) (venue); *Steere Tank Lines, Inc. v. ICC*, 675 F.2d 763, 765 & n.5 (5th Cir. 1982) (exhaustion). Therefore, the court's *sua sponte* dismissal on either ground might result in a refusal to reach the merits when defendant himself would prefer a determination on the merits rather than a different venue or the delay that results from exhaustion.

cause the occurrences on the bus took place in states other than Texas, the district court reasoned, venue was improper.

In *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), however, the Supreme Court held that the FTCA is not the sole damages remedy for unconstitutional prison conditions. The Court held that the prisoner has an implied cause of action under the Constitution itself against the responsible prison officials. In so holding, the Court stressed the differences between the implied constitutional remedy and the FTCA remedy, *see id.* at 18–24, 100 S.Ct. at 1472–74, and concluded, "Plainly FTCA is not a sufficient protector of the citizens' constitutional rights . . . ." *Id.* at 23, 100 S.Ct. at 1474.

██ Since plaintiff attempted to bring this suit against federal officers directly under the Constitution, his remedies are not limited by the requirements of the FTCA. Thus, the FTCA venue statute is not controlling. Because there is no specific venue statute for implied actions under the Constitution, the court must look to the general venue statutes, 28 U.S.C. §§ 1391–1393; *see generally* 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3804 (1976) [hereinafter Wright & Miller].

██ The general venue statutes allow a federal question case to be brought not only in the district where the acts or omissions occurred, but also, for example, in the district "where all defendants reside." 28 U.S.C. § 1391(b). It is possible that venue is proper in this case because of the residence of the defendants.[3] It would be inappropriate for this court to make a final determination on this issue, however, since plaintiff has made no allegations attempting to explain why the district is a proper

venue.[4] Nor is he required to do so. 15 Wright & Miller, *supra*, § 3826, at 166–67. "[T]he burden is on the defendant to object in a proper and timely fashion if he thinks venue improper." *Id.* at 167. Since the district court has not yet required the defendants to answer, it would be inappropriate for the court to anticipate a venue problem under the general venue statutes.

We limit ourselves, therefore, to holding that the district court's conclusion concerning venue was in error.

### IV. *Exhaustion of Remedies*

The district court held that the plaintiff had failed to exhaust his administrative remedies, but it did not specify what the unexhausted remedies were. The court's failure is troublesome because the complaint contains a detailed description of plaintiff's attempts to secure an administrative remedy. The problem is compounded by the lack of an adversary to show how plaintiff's attempts to exhaust were deficient.

The Bureau of Prisons' administrative remedy procedure is contained in part 542 of 28 C.F.R. The first step in the procedure is informal resolution. 28 C.F.R. § 542.-13(a) (1981). If that fails, the inmate "may file a formal written complaint, on the appropriate form." *Id.* § 542.13(b). The "appropriate form" has been identified in Bureau of Prisons policy statements as a "BP-DIR–9." *E.g., Thompson v. United States*, 492 F.2d 1082, 1086 (5th Cir. 1974) (appendix). "If the inmate is not satisfied with the Warden's response" to the initial complaint,

> that response may be appealed on the appropriate form to the Regional Director within twenty (20) calendar days

---

**3.** *See* 1 Moore's Federal Practice ¶ 0.142[5.–1–2], at 1396 (1974) ("Where a public official is a party to an action in his official capacity he resides in the judicial district . . . where he performs his official duties.").

**4.** On this appeal, plaintiff argues that venue is proper under 28 U.S.C. § 1391(e), which provides for venue in "*any* judicial district in which (1) *a* defendant resides" when "a defendant is an officer or employee of the United

States or any agency thereof acting in his official capacity" (emphasis added). While this argument may be correct insofar as the plaintiff seeks declaratory and injunctive relief against the defendants in their official capacities, § 1391(e) is not the proper venue statute for plaintiff's claims for damages against these defendants. *Stafford v. Briggs*, 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980).

of the date of the Warden's response. If the inmate is not satisfied with the Regional Director's response, that response may be appealed on the appropriate form to the General Counsel within thirty (30) calendar days from the date of the Regional Director's response.

28 C.F.R. § 542.15 (1981). The "appropriate form" for an appeal has been identified in Bureau of Prisons policy statements as a "BP–DIR–10." *Thompson v. United States*, 492 F.2d at 1086 (appendix).

Plaintiff alleges that the occurrences at issue began on August 22, 1980. He further alleges that he requested an informal resolution on August 29, and filed BP–DIR–9's on September 2 and September 5. He claims that the first complaint was returned to him on September 22 without a satisfactory resolution, and that the second complaint was never returned to him. He alleges that he then sent a BP–DIR–10 to the Regional Director, which was returned to him marked "REFUSED" on October 10.

Plaintiff alleges that he filed yet another DP–DIR–9 on October 16, which was returned by the warden without a response on October 20, shortly before the plaintiff returned to Terre Haute. Plaintiff says he resubmitted the same complaint to the warden by mail from Terre Haute, and that he received a response on November 12 informing him that his complaints concerning the Texarkana prison were moot.

Finally, plaintiff alleges that he appealed "all" of these responses to the General Counsel on November 18. He does not tell us what the General Counsel's response was.

These allegations indicate that plaintiff's attempts to exhaust his administrative remedies may have been deficient. While plaintiff's appeal to the Regional Director from the response to his early September complaints appears to have been timely, more than 30 days elapsed before plaintiff filed his final administrative appeal with the General Counsel. Plaintiff never sought an intermediate appeal of his October 20 complaint, but appealed directly to the General Counsel.

Nevertheless, we cannot conclude that the possible deficiencies revealed by plaintiff's complaint warrant dismissal of the complaint as "frivolous or malicious." First, we do not know on what basis the General Counsel rejected plaintiff's appeal. If the appeal was denied on its merits rather than on the ground that it was untimely or that an intermediate appeal had not been taken, there would be no reason for the court to refuse to consider the claim on its merits. Second, plaintiff drafted his own complaint, and we do not think that a *pro se* complaint should be dismissed on its face by a technical reading of the available administrative procedures when plaintiff has made detailed allegations showing a substantial effort to obtain an administrative remedy, *cf. Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976) ("a [prisoner's] *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers'"); it will be time enough to dismiss on this ground when the prison officials have answered the complaint and demonstrated the deficiency of plaintiff's efforts. Third, plaintiff alleges that the prison officials ignored and interfered with his attempts to pursue an administrative remedy, and we have written that when an administrative remedy is inadequate the inmate should be excused from the exhaustion requirement. *See Miller v. Stanmore*, 636 F.2d 986, 991 & n.8 (5th Cir. 1981). Finally, the time limits for seeking an administrative remedy have long since passed, and it is thus likely that an administrative remedy is no longer available for plaintiff. There may be a substantial question whether the plaintiff's missteps in following the administrative procedures should result in the forfeiture of his right to seek relief in court. We deem it unwise even to hazard a guess concerning this question in this case, given the lack of a record and of adversarial briefing.

On the present record, we cannot uphold the district court's conclusion that the plaintiff's allegations that he has exhausted his administrative remedies or that he should

be excused from exhaustion are "frivolous or malicious." *Cf. Miller v. Stanmore*, 636 F.2d at 991 (ordering remand for exploration of exhaustion issue even though plaintiffs made no allegation of exhaustion). Before the court again dismisses the action for failure to exhaust remedies, process should issue and the defendants should be required to answer and make an appropriate motion. Any remedy that plaintiff has failed to exhaust should be identified, and his claims of interference with his attempts to exhaust should be considered.

## V. *The Merits of Plaintiff's Claims*

■ The district court concluded that the complaint stated no claim of constitutional dimension. We agree that plaintiff's claim of cruel and unusual punishment is "frivolous" under 28 U.S.C. § 1915(d).[5] We conclude, however, that there is insufficient factual information in the complaint by which to assess plaintiff's other two claims.

### A. *Section 1915(d) Determinations*

To determine whether a complaint is frivolous under 28 U.S.C. § 1915(d), the court must inquire whether there is an "arguable" "factual and legal basis, of constitutional dimension, for the asserted wrong." *Watson v. Ault*, 525 F.2d at 892.

■ In assessing complaints under this standard, our precedents provide two rules of construction. On the one hand,

> a [prisoner's] *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears " 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' "

*Estelle v. Gamble*, 429 U.S. at 106, 97 S.Ct. at 292 (citations omitted), *quoted in Williams v. Rhoden*, 629 F.2d 1099, 1101 (5th

Cir. 1980) (reversing district court's purported § 1915(d) determination); *see Taylor v. Gibson*, 529 F.2d 709, 714 (5th Cir. 1976) (same standard applies in § 1915(d) determination).

On the other hand, we have often described the court's authority to dismiss under § 1915(d) as "broader" than that under Rule 12(b)(6), *e.g., Green v. City of Montezuma*, 650 F.2d 648, 650 (5th Cir. 1981), in that the plaintiff may be required to particularize his allegations prior to service of process, *Watson v. Ault*, 525 F.2d at 892, and the court will be permitted to "ascertain whether there is a factual basis for the petitioner's suit," *id.* at 891 (citing *Jones v. Bales*, 58 F.R.D. 453, 463–64 (N.D.Ga. 1972), *aff'd on the basis of the district court's opinion*, 480 F.2d 805 (5th Cir. 1973)).

### B. *The Eighth Amendment Claim*

We think that plaintiff's factual contentions of cruel and unusual punishment are sufficiently particularized in the complaint to allow the court to determine now that the Eighth Amendment claim is frivolous.

The standards for an Eighth Amendment challenge to the conditions of one's confinement were summarized by the Supreme Court in *Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). To the extent relevant to this case, prison conditions, "alone or in combination," are cruel and unusual punishment if they "result[ ] in unquestioned and serious deprivation of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities." *Id.* at 347, 101 S.Ct. at 2399. The Eighth Amendment, however, provides no protection from conditions that are "restrictive and even harsh," for "they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347, 101 S.Ct. at 2399. Moreover, the Eighth Amendment gives the courts no license "to manage prisons . . . or . . . to second-guess

---

**5.** The court did not expressly say that the claims were "frivolous." However, it had referred the case to the magistrate for a § 1915(d) determination. Moreover, the court wrote in its opinion that "Plaintiff's complaint, generally, is one of inconvenience, and inconvenience does not violate any constitutional

right [of an inmate]." Since the court could not determine the merits of plaintiff's complaint prior to service of process without concluding that the complaint was "frivolous" under § 1915(d), *see Watson v. Ault*, 525 F.2d at 892–93, we treat the court's conclusion as a § 1915(d) determination.

prison administrators." *Ruiz v. Estelle*, 679 F.2d 1115, 1126 (5th Cir. 1982).

When measured by these standards, plaintiff's factual allegations fall far short of stating an "arguable" claim "of constitutional dimension." *Watson v. Ault*, 525 F.2d at 892.

■ In August 1980, plaintiff was transferred for two months to the federal prison in Texarkana. He first complains of the conditions on his bus ride. He complains that he was shackled to his seat, that the toilet on the bus provided "no curtain, wall, screen or other means of privacy," and that the food supplies were stored close to the toilet. These conditions do not violate the Constitution. It goes without saying that prisoners may be restrained. That the toilet was in open view made its use no less "cruel and unusual" than use of the facilities in numerous locker rooms and public rest rooms throughout the country. And, in the absence of allegations that the food supplies became contaminated because of the prison officials' neglect, the storage of the food is a matter for the prison officials. *See generally Newman v. Alabama*, 559 F.2d 283, 291 (5th Cir. 1977) (Eighth Amendment requires only "reasonably adequate" food), *rev'd in part on other grounds and cert. denied*, 438 U.S. 781, 915, 98 S.Ct. 3057, 3144, 57 L.Ed.2d 1114 (1978).

■ Plaintiff next complains that he and the other prisoners on the bus spent their first day in Texarkana in "administrative segregation." He says that he was not permitted to take a bath that day, and that the cells were dirty and hot. He alleges that the next day, a plumbing problem resulted in the cutoff of water to his cell for

several hours. On the third day, he was moved. to a new cell, and he makes no complaints about its condition.

These allegations of two days of discomfort are not sufficient to state a claim of constitutional dimension. *Cf. Russell v. Enser*, 496 F.Supp. 320, 325 (D.S.C.1979) (summary judgment) ("the absence of a bath for one week (if true) for a prisoner in transient status would not present a constitutional issue for trial"), *aff'd mem.*, 624 F.2d 1095 (4th Cir. 1980); *Evans v. Fogg*, 466 F.Supp. 949, 950 (S.D.N.Y.1979) (judgment on pleadings) (prisoner's confinement in a refuse-strewn cell for 24 hours and in a flooded cell for two days "cannot be said to rise to the magnitude of constitutional violations").[6] As for the temporary plumbing problem, a sentence in federal prison is not a guarantee that one will be safe from life's occasional inconveniences.

The dismissal of plaintiff's Eighth Amendment claim is affirmed.

### C. *Plaintiff's Other Two Claims*

■ Plaintiff claims that he was placed in disciplinary confinement without due process, and that he was denied access to the courts. There are few factual allegations in the complaint to support these claims. Nevertheless, because of the liberal construction to be given *pro se* pleadings, we do not think that the complaint may be dismissed without giving plaintiff the opportunity to supplement his conclusory allegations with particularized facts through the questionnaire procedure approved in *Watson v. Ault*, 525 F.2d at 892. Therefore, we remand for further consideration of these two claims.

---

**6.** A number of courts have held that one or two showers a week is sufficient to satisfy constitutional requirements. *E.g., Krist v. Smith*, 309 F.Supp. 497, 498 (S.D.Ga.1970) (approving confinement despite a number of harsh conditions, including restriction to two showers a week), *aff'd per curiam*, 439 F.2d 146 (5th Cir. 1971); *Lake v. Lee*, 329 F.Supp. 196, 199 (S.D.Ala. 1971) (*see also McCray v. Sullivan*, 509 F.2d 1332, 1335 (5th Cir.) (refusing to reopen this part of *Lake v. Lee* decree), *cert. denied*, 423 U.S. 859, 96 S.Ct. 114, 46 L.Ed.2d 86 (1975)); *Preston v. Thompson*, 589 F.2d 300, 302–03

(7th Cir. 1978) (district court ordered that prisoners be allowed two showers a week); *Sostre v. McGinnis*, 442 F.2d 178, 186, 191–94 (2d Cir. 1971) (en banc) (restriction to one shower a week, together with other harsh conditions, not cruel and unusual), *cert. denied*, 404 U.S. 1049, 405 U.S. 978, 92 S.Ct. 719, 1190, 30 L.Ed.2d 740, 31 L.Ed.2d 254 (1972); *Jordan v. Arnold*, 472 F.Supp. 265, 268 (M.D.Pa.1979) (describing earlier court order mandating two showers a week), *appeal dismissed*, 631 F.2d 725 (3d Cir. 1980).

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.