Marion C. BUCHANAN, et al.,
Plaintiffs–Appellants,

v.

UNITED STATES of America, et al.,
Defendants–Appellees.

No. 90–4288
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Oct. 26, 1990.

Rehearing and Rehearing En Banc
Denied Dec. 5, 1990.

Karl J. Koch, Baton Rouge, La., for plaintiffs-appellants.

William J. Flanagan, Asst. U.S. Atty., Shreveport, La., Joseph S. Cage, Jr., U.S. Atty., Thomas B. Thompson, Asst. U.S. Atty., Lafayette, La., John A. Broadwell, Asst. U.S. Atty., Shreveport, La., for defendants-appellees.

Before KING, GARWOOD, and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge.

Federal prisoners who were held hostage by Cuban detainees during a prison uprising appeal the dismissal of their suit against the United States for damages under the Federal Tort Claims Act (FTCA). The district court held that the discretionary function exception to the FTCA bars the prisoners' claims. We affirm.

In 1987 the Federal Detention Center at Oakdale, Louisiana was a low-to-medium security facility with open, dormitory-style housing and no segregation unit. It housed about 1,200 Cuban detainees who had entered the United States in the Mariel boatlift. These Cuban nationals remained in federal custody pending review of their immigration status. Seventy American prisoners assigned to a work detail were also at the Oakdale facility.

On November 20, 1987, the State Department and Cuba reinstated a 1984 repatriation agreement that would possibly result in the return of many detainees to Cuba. The warden at the Oakdale facility learned of the repatriation agreement just hours

before the first news reports of the agreement were broadcast. The warden and his staff thus had little time to prepare the detainees for the announcement or to dispel their fears.

After learning of the agreement, the warden conferred with his staff to discuss plans for announcing the agreement within the facility and for containing the potential unrest among detainees. To avoid inflaming an already volatile situation, the staff made a conscious decision to maintain the appearance of normal operations while quietly preparing to control any disruptive behavior.

Bilingual prison officials circulated among the detainees to inform them of the announced agreement. Their reactions were mixed; some voiced concern and criticism but many became sullen and quiet. The warden doubled or tripled evening shift posts and assigned extra staff members to perimeter patrol.

That evening in the dining room, an intoxicated detainee began overturning trays and throwing food. Many other detainees then joined in the fracas by throwing trays, dishes, and food. The staff responded to the emergency by escorting the detainees to their housing units. When the warden learned of the disturbance, he returned immediately to the institution. He observed that cleanup was underway and that the evening meal had resumed.

The next day, after failing in a mass escape attempt, the detainees gained control of the facility. They initially took thirty-six hostages, including American prisoners and staff members. In the nine days that followed, the detainees destroyed many of the facility's buildings and subjected the hostages to intense psychological pressure by threatening to kill them if the government launched any rescue attempts. The detainees, however, provided adequate physical care and protected the hostages from the most violent detainees.

The government negotiated with the detainees throughout the nine-day ordeal. It eventually achieved its two paramount goals: to ensure the safe release of the hostages and to return all detainees to the custody of prison officials.

The American prisoners now allege that the United States is liable to them under the FTCA for psychological harassment and physical abuse suffered during the prison uprising. They contend that prison officials were grossly negligent in failing to provide them with adequate protection from the Cuban detainees and in failing to prevent the uprising after receiving clear warnings of detainee unrest.

*Discretionary Function Exception*

■ Whether the district court lacked jurisdiction to consider the government's conduct in this case is a question of law, subject to *de novo* review by this Court. *Baker v. United States*, 817 F.2d 560, 562 (9th Cir.1987), *cert. denied*, 487 U.S. 1204, 108 S.Ct. 2845, 101 L.Ed.2d 882 (1988); *see Windfield v. Groen Div., Dover Corp.*, 890 F.2d 764, 766 (5th Cir.1989). If the government's conduct falls within the discretionary function exception to the FTCA, then the district court properly dismissed the case for lack of subject matter jurisdiction.

The discretionary function exception preserves governmental immunity from suit under the FTCA for

[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, *or* based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a) (1982) (emphasis added). *See United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808–09, 104 S.Ct. 2755, 2761–62, 81 L.Ed.2d 660, 671 (1984).

■ This subsection contains two clauses beginning with "based upon" and separated by the disjunctive "or." These clauses set forth two separate exceptions to the FTCA. *See Lively v. United States*, 870 F.2d 296, 297 (5th Cir.1989). The first clause, exempting actions mandated by

statute or regulation, applies only if the actor has exercised due care. The second clause, exempting actions based on a discretionary function, contains no due care requirement.

This exception reflects a congressional intent to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Varig Airlines*, 467 U.S. at 814, 104 S.Ct. at 2765, 81 L.Ed.2d at 674–75. This congressional intent applies to both clauses of the subsection, because the first clause exempts from judicial scrutiny the decisions of legislative bodies and the second clause exempts the decisions of government employees at every level, acting in the exercise of their discretion.

The American prisoners contend that the first clause of the subsection does not bar their claims because a federal statute establishes for prison officials a mandatory duty of due care that the Oakdale officials have breached. The statute requires the exercise of ordinary diligence to keep prisoners safe and free from harm. *See* 18 U.S.C. § 4042 (1988).[1]

■ Yet even if we assume, *arguendo*, that prison officials failed to exercise due care, the second clause of the subsection could still provide the government with immunity against suit. The question we must answer, then, is not whether the prison officials acted with due care but whether their conduct was the result of the performance of a discretionary function. *See Lively*, 870 F.2d at 298.

"[I]t is unnecessary—and indeed impossible—to define with precision every contour of the discretionary function exception." *Varig Airlines*, 467 U.S. at 813, 104 S.Ct. at 2764, 81 L.Ed.2d at 674. Yet the Supreme Court has provided guidance for determining whether the acts of a government employee are shielded from liability.

"[T]he nature of the conduct, rather than the status of the actor, ... governs whether the discretionary function exception applies...." *Id.* at 813, 104 S.Ct. at 2764, 81 L.Ed.2d at 674. A court must ask whether the challenged acts, regardless of the rank of the actor, "are of the nature and quality that Congress intended to shield from tort liability." *Id.* An action is shielded from liability if it was "a matter of choice for the acting employee." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531, 540 (1988).

The discretionary function exception, then, does not apply if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id.* Conduct cannot be discretionary if mandated by law. *Id.* at 536–38, 108 S.Ct. at 1959, 100 L.Ed.2d at 540–42. In this case, however, no statute, regulation, or policy does, or indeed could, specifically prescribe a course of action for prison officials to follow in every prison uprising.

We interpret the general discretionary function in this case as responding to an emergency in a prison under siege by rioting Cuban detainees. Prison officials were required to react swiftly, making many difficult choices in an attempt to stem the tide of violence and destruction.

"[A] prison's internal security is peculiarly a matter normally left to the *discretion* of prison administrators." *Rhodes v. Chapman*, 452 U.S. 337, 349 n. 14, 101 S.Ct. 2392, 2400 n. 14, 69 L.Ed.2d 59, 70 n. 14 (1981) (emphasis added). When the potential for violence ripens into actual unrest and conflict, this principle carries special weight. *See Whitley v. Albers*, 475 U.S. 312, 321, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251, 261–62 (1986).

---

1. The relevant part of this section provides:
   The Bureau of Prisons, under the direction of the Attorney General, shall—
   (1) have charge of the management and regulation of all Federal penal and correctional institutions;
   (2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise;
   (3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States;
   . . . .

"Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447, 474 (1979). That deference "requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice." *Whitley,* 475 U.S. at 322, 106 S.Ct. at 1085, 89 L.Ed.2d at 262.

Prison officials' minute-to-minute decision making in the chaotic circumstances of a riot is a classic example of an activity requiring the exercise of discretion, not only by officials of the Federal Bureau of Prisons but also by the Oakdale warden and each member of his staff. After considering the potential for violence inherent in the announcement of the repatriation agreement, prison officials decided that transferring American prisoners to another facility would heighten the tension at Oakdale and create greater fear and frustration among Cuban detainees. The officials also concluded that a lock-down would be extremely difficult and possibly counterproductive in the open, dormitory-style housing units of the Oakdale facility.

We do not believe that Congress meant for judges, through hindsight, to second-guess such difficult decisions. *See Varig Airlines,* 467 U.S. at 814, 104 S.Ct. at 2764–65, 81 L.Ed.2d at 674–75. Neither do we believe that Congress intended to expose the government to tort liability that would place an even greater burden on prison officials during dangerous uprisings and that would increase the complexity of what is already "an extraordinarily difficult undertaking." *Hewitt v. Helms,* 459 U.S. 460, 467, 103 S.Ct. 864, 869, 74 L.Ed.2d 675, 685 (1983); *Wolff v. McDonnell,* 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935, 956–57 (1974); *cf. B & F Trawlers, Inc. v. United States,* 841 F.2d 626, 631 (5th Cir.1988) (refusing to extend tort liability that would inhibit the Coast Guard in apprehending drug-running vessels). We therefore hold that the district court correctly concluded that the discretionary function exception to the FTCA shields the government from liability in this case.

*Relation Back of Claims of Hubbard and Richardson*

The district court dismissed with prejudice the claims of Kenneth Hubbard and Larry Richardson, two American prisoners at the Oakdale facility during the prison uprising, as barred by the statute of limitations. Hubbard and Richardson had attempted to join as plaintiffs by amending the original complaint after the six-month limitations period had ended. They contend that under Federal Rule of Civil Procedure 15(c), the date of the amended complaint relates back to the date of the original complaint.

Because we hold that the discretionary function exception to the FTCA bars the claims of the American prisoners against the government, we find it unnecessary to consider whether the district court properly dismissed the claims of Hubbard and Richardson.

The judgment of the district court is AFFIRMED.