IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 14, 2008

Charles R. Fulbruge III
Clerk

No. 06-41082

ALBERT GENE JOHNSON

Plaintiff-Appellee

v.

SERGEANT MARCUS D. FORD, ET AL.

Defendants-Appellants

Appeal from the United States District Court
for the Southern District of Texas, Corpus Christi Division
USDC No. 2:05-CV-223

Before HIGGINBOTHAM, DAVIS, and SMITH, Circuit Judges.

PER CURIAM:[1]

This is an interlocutory appeal in a 42 U.S.C. § 1983 action from a denial of motion for summary judgment seeking dismissal based on a state prisoner's failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a). This Court granted an interlocutory appeal on the issue of whether a state prisoner may properly bring suit against prison guards who for three days denied him access to insulin shots he was to receive where the inmate had not exhausted administrative remedies before bringing suit. More particularly, we

---

[1] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

consider whether after the recent Supreme Court case Woodford v. Ngo, ___ U.S. ___, 126 S. Ct. 2378 (2006), the state prisoner can avoid the exhaustion requirement based on waiver, estoppel, or equitable tolling. We hold that under the facts of this case, he cannot.

I.

Albert Gene Johnson, a Texas prisoner, filed a complaint against defendant prison officers claiming that they were deliberately indifferent to his serious medical needs when they denied him access to medical treatment. He alleged that the officers deprived him of his twice-daily insulin shots for three days in a row, November 19, 20, and 21, 2004, despite his symptoms of elevated blood sugar and his repeated requests to be taken to the infirmary for the shots.

On November 20, 2004, Johnson wrote to the Texas Board of Criminal Justice, Office of the Inspector General, Investigations Department, complaining that he had not been escorted by the officers to receive his insulin shots. On November 20, Johnson also sent an informal I-60 request to Warden Stephens, and on November 21, Johnson sent an I-60 request to Physician's Assistant Woodcroft, each making the same complaint about not receiving his insulin shots.

On November 24, Johnson was notified that Stephens had informed Captain Martinez of Johnson's I-60 request and had advised Martinez: "Due to the seriousness of the allegations, I am requesting that you conduct an investigation and forward a response to my office no later than Tuesday, November 30, 2004." Also on November 24, in response to the I-60 sent to Woodcroft, Johnson received a response from Nurse Vaughn telling him that the situation would be addressed, that security would be notified by medical, and that he would be escorted to the infirmary. On December 6, 2004, Johnson filed another I-60 request inquiring into the status of Captain Martinez's investigation. Johnson never received a response regarding this request. On

January 7, 2005, Johnson received a response to his letter of November 20 from the Texas Board of Criminal Justice, Office of the Inspector General, Investigations Department which informed Johnson that no investigation would be conducted by that department and that, instead, the complaint would be forwarded to the Office of Professional Standards, Health Services. Attached to this response was a notice dated January 3, 2005, which explained that as of September 1, 2004, the Texas Department of Criminal Justice, Patient Liaison Program would no longer accept complaints from prisoners and that instead prisoners are required to use the "Informal Resolution / Complaints Process and the Offender Grievance mechanism" to address health-related issues. The notice further explained that "[e]ach facility has an informal complaints process in place," and it instructed that resolution of complaints must first be attempted through the informal process.[2] The day after receiving this notice, on January 8, 2005 (48 days after the last date on which the incident occurred), Johnson filed a step 1 grievance complaining about the insulin incident. The grievance was returned to him unprocessed with a notation that the grievable time period had expired.[3] On January 11, Johnson submitted another step 1 grievance, explaining in it the procedures he had previously followed to try to resolve this issue. This grievance was also returned to him unprocessed stating that the grievable time period had expired. Finally, on January 16, 2005, Johnson filed a step 2 grievance, appealing the step 1 grievances. This step 2 grievance was

---

[2] This notice comports with the policy set forth in the Texas Department of Criminal Justice's Offender Orientation Handbook regarding resolution of inmates' problems. See TEXAS DEPARTMENT OF CRIMINAL JUSTICE, OFFENDER ORIENTATION HANDBOOK, at 52 (Nov. 2004), available at http://www.tdcj.state.tx.us/publications/cid/OffendOrientHbNov04.pdf (last visited 12/18/07).

[3] In Texas, "[p]risoners are allowed 15 calendar days to file a step 1 grievance." Wendell v. Asher, 162 F.3d 887, 891 (5th Cir. 1998) (overruled by implication on other grounds by Jones v. Bock, ___ U.S. ___, 127 S. Ct. 910, 920–21 (2007)) (citing TEXAS DEPARTMENT OF CRIMINAL JUSTICE, ADMINISTRATIVE DIRECTIVE No. AD-03.82, Policy para. VI (Jan. 31, 1997)). See also TEXAS DEPARTMENT OF CRIMINAL JUSTICE, OFFENDER ORIENTATION HANDBOOK, at 52.

returned to him stating that a step 2 appeal could not be submitted where the step 1 grievance had been returned as unprocessed.

## II.

The standard of review for the denial of a motion to dismiss for failure to exhaust administrative remedies is de novo. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004) (citing *Richardson v. Spurlock*, 260 F.3d 495, 499 (5th Cir. 2001)).

## III.

## A.

Johnson argued before the district court that the officers, in their official and individual capacities, violated his rights under the Eighth and Fourteenth Amendments and requested declaratory relief, compensatory damages, punitive damages, attorney fees, and any other relief to which he was entitled. The district court granted the officers' request for summary judgment regarding the officers' sovereign immunity in their official capacities under the Eleventh Amendment, and it denied the request by defendant officers for summary judgment on the issues of failure to exhaust administrative remedies and qualified immunity of the officers in their individual capacities. The defendants sought certification of the exhaustion of administrative remedies issue pursuant to 28 U.S.C. § 1292(b). The district court certified the question to this Court, and we granted leave to appeal. Thus, the only issue before this Court on interlocutory appeal is whether Johnson can avoid the exhaustion of administrative remedies requirement based on a defense of waiver, estoppel, or equitable tolling.

## B.

According to 42 U.S.C. § 1997e(a): "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1996). The purposes of this exhaustion requirement are to "give an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court" and to allow for claim resolution in proceedings before an agency because it is faster and more economical than litigation in federal court. Woodford, 126 S. Ct. at 2385 (quoting McCarthy v. Madigan, 503 U.S. 140, 145 (1992)).

In this Circuit, "a strict approach" is taken to the exhaustion requirement. Days v. Johnson, 322 F.3d 863, 866 (5th Cir. 2003). In Texas, an inmate must follow the two-step grievance process to exhaust administrative remedies. Johnson, 385 F.3d at 515. However, this Circuit has held that "the exhaustion requirement 'may be subject to certain defenses such as waiver, estoppel, or equitable tolling.'" Days, 322 F.3d at 866 (quoting Wendell, 162 F.3d at 890) (overruled by implication on other grounds by Jones, 127 S. Ct. at 920–21)); see also Wright v. Hollingsworth, 260 F.3d 357, 358 n. 2 (5th Cir. 2001). This Court has also held that a district court must afford a prisoner an opportunity to show that he has either exhausted the available administrative remedies or that he should be excused from this requirement. Miller v. Stanmore, 636 F.2d 986, 991 (5th Cir. 1981). We have recognized, as a basis for excuse, circumstances where administrative remedies are inadequate because prison officials have ignored or interfered with a prisoner's pursuit of an administrative remedy. Holloway v. Gunnell, 685 F.2d 150, 154 (5th Cir. 1982). Further, exhaustion requirements may be excused where dismissal would be inefficient and would not further the interests of justice or the purposes of the exhaustion requirement. Underwood v. Wilson, 151 F.3d 292, 296 (5th Cir. 1998) (overruled by implication on other grounds by Jones, 127 S. Ct. at 920–21); see also e.g., Days, 322 F.3d at 868 (where prisoner's broken hand prevented him from filling out and filing a timely grievance, failure to meet exhaustion requirement was excused).

The defendant officers argue that, although this Court has held that the exhaustion requirement is subject to defenses, this Court has not examined that holding in light of Woodford, in which the Supreme Court recently held that "proper exhaustion of administrative remedies is necessary" and that a prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." 126 S. Ct. at 2382. The officers also argue that Johnson's informal requests did not excuse him from the requirement that he file his grievance through the two-step grievance process within fifteen days of the incident. Further, they question whether the defenses of waiver, estoppel, or equitable tolling can be relied upon at all absent a showing that [the prisoner] was physically or procedurally prevented from seeking redress through the prison system's established grievance procedures. Johnson agrees that administrative remedies must be exhausted pursuant to 42 U.S.C. § 1997e(a); however, he argues that his informal requests and attempts to utilize the two-step grievance mechanism excuse him from complying with the exhaustion requirement. He argues that he was prevented from seeking redress through the grievance process because he was advised to proceed through informal resolution and because he was advised by the Warden that the matter was being investigated.

The Supreme Court in Woodford held that the exhaustion requirement requires "proper exhaustion," meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." Id. at 2387, 2384 (emphasis added).[4] In Woodford, the prisoner was placed in administrative segregation for two months for certain inappropriate acts he

---

[4] This holding that exhaustion means "proper exhaustion" is in contrast to the Respondent's argument in Woodford that § 1997e(a) means merely that a prisoner "may not bring suit in federal court until administrative remedies are no longer available." Woodford, 126 S. Ct. at 2384.

committed in the prison chapel. Id. at 2383. The prisoner claimed he was thereafter prohibited from participating in "special programs," including a variety of religious activities. Id. Approximately six months later, he filed his first and only administrative complaint — a grievance with prison officials which was rejected as untimely because it was not filed within fifteen days of the action being challenged. Id. at 2383–84. After holding that proper exhaustion was required, the Court also explained that it was not addressing a situation in which the prison's system deliberately devised procedural requirements designed to "trap" and "defeat [the] claims" of unwary prisoners. Id. at 2392–93.

In the instant case, Johnson has no basis to excuse the untimely filing of his step 1 grievance. The Texas Department of Criminal Justice clearly sets out its grievance policy in its Offender Orientation Handbook:

> An attempt to informally resolve your problem must be made before filing a grievance. Informal resolution is defined as any attempt to solve the issue at hand and must be noted on the Step 1 grievance form (I-127). You have 15 days from the date of the alleged incident or occurrence of the issue presented in which to complete the Step 1 grievance form and forward it to the Unite Grievance Investigator (UGI).

TEXAS DEPARTMENT OF CRIMINAL JUSTICE, OFFENDER ORIENTATION HANDBOOK, at 52 (Nov. 2004), available at http://www.tdcj.state.tx.us/publications/cid/OffendOrientHbNov04.pdf (last visited 12/18/07) (emphasis added). Although Johnson did initially follow the procedures by attempting to informally resolve his issue before filing a grievance, his belief that a grievance need not be filed until after a final resolution of the informal complaint process is unfounded. The Texas policy specifically requires the grievance be filed within 15 days of the incident, not within 15 days of the response received to his informal resolution attempt. Id.

A copy of the handbook setting forth this procedure is provided to offenders upon entering the Texas Department of Criminal Justice. Id. at v.

The prison's policy of requiring the filing of a grievance within 15 days is not a situation contemplated in Woodford in which the system deliberately devised procedural requirements designed to "trap" and "defeat [the] claims" of unwary prisoners. Woodford, 126 S. Ct. at 2392. Furthermore, prison officials did not ignore or interfere with Johnson's pursuit of an administrative remedy, and Johnson does not allege facts to the contrary. See Holloway, 685 F.2d at 154. Johnson's argument that he relied on the Warden's order of an investigation by Martinez does not serve to excuse his untimely filing of his grievance in the face of a clear 15-day deadline to file a formal grievance. Further, there is no basis for excuse from the exhaustion requirement based on a policy of preventing inefficiency or a failure to further the interests of justice or the purposes of the exhaustion requirement. See Underwood, 151 F.3d at 296. The grievance policy set forth by the Texas Department of Criminal Justice is intended to foster efficiency. By not following the grievance procedure, Johnson has made this process less efficient. Thus, under the Supreme Court precedent and our Circuit's precedent, Johnson has no excuse for failing to exhaust his administrative remedies. See Days, 322 F.3d at 866; Woodford, 126 S. Ct. at 2385, 2387.

IV.

Accordingly, the district court's denial of motion for summary judgment on the issue of failure to exhaust administrative remedies is REVERSED and judgment is RENDERED in favor of Appellants.

REVERSED and RENDERED.