# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-20762

United States Court of Appeals
Fifth Circuit

**FILED**

January 27, 2014

Lyle W. Cayce
Clerk

JAMES ELI HUFF, II,

Plaintiff - Appellant,

v.

LATOINA NEAL; SCOTT FAUVER; UNKNOWN NAMED FEDERAL BUREAU OF PRISONS MEDICAL STAFF; UNITED STATES OF AMERICA,

Defendants - Appellees.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CV-2000

Before JONES, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:*

James Eli Huff, II, a federal prisoner proceeding *pro se*, filed suit against Latoina Neal, Scott Fauver, unknown medical staff at the federal Bureau of Prisons ("BOP"), and the United States of America (collectively, the "defendants"), asserting claims pursuant to *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA"). The district court granted summary judgment to the

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-20762

defendants on the *Bivens* claims and dismissed the FTCA claims.  Because Huff failed to exhaust his administrative remedies with respect to the *Bivens* claims and because the defendants' actions underlying the FTCA claims fell within the discretionary function exception, we AFFIRM.

## I.

Huff was incarcerated at the Federal Correctional Institution in Big Spring, Texas.[1]  On July 6, 2007, Huff informed Corrections Officer John Skidmore that a violent prison gang, the Hermanos Pistoleros Latinos ("Pistoleros"), had threatened several inmates over mealtime seating arrangements.  The next day, in investigating this claim, Lieutenant Neal openly called Huff into her office; after he left, she called three Pistoleros into her office.  According to Huff, Lieutenant Neal's "open investigation procedure" portrayed Huff as a snitch.  Huff then reported to Officer Skidmore that he had been threatened by a Pistoleros member for being a snitch.  On July 10, 2007, Captain Fauver approved the placement of two Pistoleros gang members into Huff's unit.  Two days later, on July 12, 2007, three Pistoleros gang members entered Huff's cell and, while yelling "pinche ratto," violently attacked him. Huff was placed in the Special Housing Unit ("SHU") following the attack. Medical personnel noted that Huff had an injured nose; multiple abrasions and bruises on his forehead, neck, arms, torso, legs and bottoms of his feet; footprints on his back; a brain stem concussion that caused vision impairment, headaches, and dizziness; and psychological injuries.

On July 20, 2007, Huff was released from the SHU.  At that time, according to Huff, he "wanted to file a formal complaint against [Lieutenant] Neal but feared more retaliation.  [Lieutenant] Jackson inform[ed] Huff that

---

[1] We present the facts, as we must, in the light most favorable to Huff.  *See Gulf and Miss. River Transp. Co., Ltd. v. BP Oil Pipeline Co.*, 730 F.3d 484, 488 (5th Cir. 2013).

## No. 12-20762

Captain Fauver is investigating the incident and to just wait for his determination." Lieutenant Jackson again informed Huff that the investigation was ongoing on August 3, 2007.

Huff filed an informal complaint (form BP-8) with Captain Fauver on August 20, 2007, stating "his reluctance to file a complaint fearing more retaliation, and complaining about [Lieutenant] Neal's conduct portraying Huff as a snitch." On November 13, 2007, Huff filed a formal complaint (form BP-9).

On June 25, 2009, Huff filed a lawsuit against the defendants in their individual and official capacities, bringing claims under *Bivens* and the FTCA. Huff alleged that the defendants retaliated against him and failed to protect his safety. The defendants moved for summary judgment on the *Bivens* claims brought against them in their individual capacities, arguing that Huff had failed to exhaust his administrative remedies. Huff contended that he had properly exhausted his remedies and, in the alternative, that the exhaustion requirement should be excused. The district court granted the motion on failure-to-exhaust grounds.[2] The defendants later filed a motion to dismiss the FTCA claims pursuant to Federal Rule of Civil Procedure 12(b)(1), which the district court also granted, concluding that the defendants' alleged actions fell within the discretionary function exception and that therefore subject matter jurisdiction was lacking.[3] The district court denied Huff's motion for reconsideration. Huff timely appealed.

---

[2] The district court dismissed Huff's *Bivens* claims against the defendants in their official capacities based on sovereign immunity. Huff explicitly waives any challenge to the dismissal of his *Bivens* claims against the defendants in their official capacities.

[3] The district court also dismissed the FTCA claims pursuant to Rule 12(b)(6). Because we ultimately conclude that the district court was correct in dismissing the claims for lack of jurisdiction, we do not reach the failure-to-state-a-claim issue.

No. 12-20762

II.

A.

Huff challenges the district court's grant of summary judgment in favor of the defendants on his *Bivens* claims.  We review a summary judgment *de novo*.  *Dillon v. Roger*, 596 F.3d 260, 266 (5th Cir. 2010).  Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  If the moving party bears his burden of showing that no genuine issue exists, the burden then shifts to the nonmoving party to produce evidence or set forth specific facts showing the existence of a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  We view the evidence and draw inferences therefrom in the light most favorable to the non-moving party.  *Mississippi River*, 730 F.3d at 488.

B.

Huff was required to exhaust administrative remedies for his *Bivens* claims. Huff argues that he properly exhausted administrative remedies because he timely initiated the BOP's administrative process when he notified BOP staff of the imminent threats of assault by gang members.  Huff contends that there is no genuine issue of material fact as to whether the defendants had subjective knowledge that he faced serious harm.  In support of his position, Huff relies on *Smith v. Brenoettsy*, in which we stated that "all that we (and the Supreme Court) have required is that the official . . . be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists."  158 F.3d 908, 912 (5th Cir. 1998) (internal quotation marks omitted) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Huff's reliance on *Farmer* is misplaced. Under the Prison Litigation Reform Act ("PLRA"), an inmate must exhaust available administrative

4

remedies offered by the agency before bringing a civil rights claim against officials in their individual capacities. 42 U.S.C. § 1997e(a) (as amended 1996); *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) ("[T]he PLRA exhaustion requirement requires proper exhaustion."). In *Porter v. Nussle*, the Supreme Court announced that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." 534 U.S. 516, 532 (2002). The defendants in an inmate's lawsuit "must establish beyond peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in their favor." *Dillon*, 596 F.3d at 266 (citation omitted).

The BOP has a four-step process for resolving grievances by inmates. First, an inmate must attempt to informally resolve the issue with the staff. 28 C.F.R. § 542.13(a). The Inmate Handbook for the facility in which Huff was incarcerated instructs that an inmate must attempt informal resolution by filing a form BP-8. Second, if informal resolution is unsuccessful, the inmate must submit a formal written Administrative Remedy Request (form BP-9) to the warden within twenty days after the date on which the basis for the request occurred. 28 C.F.R. § 542.14. Third, if the inmate is not satisfied with the warden's response, he may submit an appeal (form BP-10) to the Regional Director within twenty days of the date of the warden's response. 28 C.F.R. § 542.15. Fourth, if the inmate is not satisfied with the Regional Director's response, the inmate may submit an appeal (form BP-11) to the General Counsel within thirty days of the Regional Director's response. 28 C.F.R. § 542.15. An inmate has not exhausted his administrative remedies until his claim has been denied at all levels.

The defendants' summary judgment evidence consisted of an affidavit from Jennifer Hanson, the Senior Attorney-Advisor for the BOP, and

authenticated computerized records. In her affidavit, Hansen outlined the procedures set forth above and attested, in pertinent part, to the following. The BOP does not retain copies of rejected administrative requests but instead returns them to the inmate. A review of BOP computerized administrative remedy records revealed that Huff failed to exhaust administrative remedies relative to the July 12, 2007, incident and the related issues he raised in his complaint. Because Huff's claims involved allegations of staff misconduct, he should have filed his request for an administrative remedy at the institution level via a BP-9 within twenty days of the incident. Huff attempted to file a BP-9 regarding the July 12, 2007, incident on November 13, 2007. That request was rejected on November 27, 2007, as untimely because it was not filed within twenty days of the incident.

In response to the defendants' motion for summary judgment, Huff asserted, among other things, that he reasonably relied on Lieutenant Jackson's statements that Captain Fauver was investigating the incident and that Huff should wait until Captain Fauver's report was issued to proceed with a complaint. Huff submitted an affidavit in which he attested that he exhausted his administrative remedies to the fullest extent permitted by "BOP Program Statement 1330.16" and that the defendants failed to respond to his BP-8 request for an informal resolution. Huff attached a verified "Administrative Remedy Compendium," asserting that: Lieutenant Jackson and BOP staff told Huff on August 17, 2007, that Captain Fauver's investigation was ongoing; on August 20, 2007, Huff filed a BP-8 to the attention of Captain Fauver, stating that he was reluctant to file a complaint because he feared retaliation; Huff was transferred on October 23, 2007, to a facility in Arkansas; on November 13, 2007, Huff filed a BP-9, stating that he had not received a response to his BP-8. Huff also attached, among other things, copies of his August 20, 2007, and November 13, 2007, filings.

No. 12-20762

The district court determined that there was no genuine issue of material fact as to whether Huff had exhausted his administrative remedies. The district court explained that "the only evidence Huff cited was his own declaration containing conclusory statements that he exhausted administrative remedies, that the BOP did not comply with its own regulations," and that it delayed its response to his request for informal resolution. The district court also concluded that Huff was not excused from the exhaustion requirement.

Huff argues that his evidence shows that he properly exhausted because he began informal resolution on August 20, 2007, was transferred to a facility in Arkansas on October 23, 2007, and filed a BP-9 on November 13, 2007, as soon as he received his property. He also contends that, under the "Best Evidence Rule," the defendants' computer-generated spread sheets of his alleged remedy filings is not competent summary judgment evidence of whether he attempted to exhaust administrative remedies. Federal Rule of Civil Procedure 56 sets out the standards for summary judgment and generally requires that evidence be sworn, certified, or verified material for a court to consider it. Rule 56(c), (e); *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir. 1987). Hansen attested that the computer records were "computerized inmate records maintained by the BOP in the ordinary course of business" and that her affidavit was based on her own personal knowledge or information acquired through the performance of her official duties. Hansen swore that "[a] thorough review of BOP computerized administrative remedy records revealed that [Huff] ha[d] failed to exhaust his administrative remedies with respect to the issues raised in his Complaint." Therefore, we agree with the district court that the defendants put forth competent summary judgment evidence.

No. 12-20762

Under 28 C.F.R. § 542.14(a), Huff was required to file both the informal resolution request and the formal administrative remedy request within twenty days of the complained of incident.  As noted above, the incident occurred on July 12, 2007.  Huff argues that he began the informal resolution request on August 20, 2007.  Huff's own evidence establishes that both his purported August 20, 2007, informal resolution request and November 13, 2007, BP-9 were submitted more than twenty days after the incident.  Huff's unsupported allegations that he did exhaust his remedies are insufficient to defeat the motion for summary judgment.  As the district court reasoned, conclusory allegations supported by conclusory affidavits are insufficient to require a trial.  *See Shaffer v. Williams*, 794 F.2d 1030, 1033 (5th Cir. 1986).  Therefore, Huff fails to raise a genuine issue of material fact as to whether he properly exhausted administrative remedies.

Huff argues, in the alternative, that he should be excused from the exhaustion requirement because Lieutenant Jackson told him that he should wait until Captain Fauver completed his investigation to file a grievance.  Huff also argues that he should be excused because his fear of retaliation rendered his administrative remedies unavailable.  We have held that "the exhaustion requirement 'may be subject to certain defenses such as waiver, estoppel, or equitable tolling.'" *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003) (quoting *Wendell v. Asher*, 162 F.3d 887, 890 (5th Cir. 1998)), *overruled by implication on other grounds by Jones v. Bock*, 549 U.S. 199, 216 (2007).  We have recognized, as a basis for excuse, circumstances where administrative remedies are inadequate because prison officials have ignored or interfered with a inmate's pursuit of an administrative remedy. *Holloway v. Gunnel*, 685 F.2d 150, 154 (5th Cir. 1982).  An inmate may be excused from the exhaustion requirement if the inmate can demonstrate that he relied on an officer's statement and that such reliance effectively rendered his administrative

remedies unavailable. *Dillon*, 596 F.3d at 268. However, "[a]n administrative remedy does not become unavailable simply because a prisoner has not timely or properly filed a grievance and is consequently later barred from seeking further administrative relief." *Id.* at 267 n.1 (citing *Woodford*, 548 U.S. at 83–84).

The district court relied on *Johnson v. Ford*, 261 F. App'x 752 (5th Cir. 2008) (unpublished), in rejecting Huff's argument that he was excused from the exhaustion requirement. In *Johnson*, as here, an inmate argued that he should be excused from exhaustion because he was advised to proceed through informal resolution and was advised by the warden that the matter was being investigated. 261 F. App'x at 759. We were not persuaded: "[The inmate's] argument that he relied on the Warden's order of an investigation . . . does not serve to excuse his untimely filing of his grievance in the face of a clear . . . deadline to file a formal grievance." *Id.* at 757.

Similarly, the evidence here demonstrates that the applicable grievance procedure, including the relevant deadlines, was available to Huff.[4] Huff's knowledge of the grievance procedure generally is evinced by his filing of a BP-8, the first step of the procedure, in August 2007 and his awareness of the BOP Program Statement, which provides the timeliness standards for the procedure. *See, e.g.*, *Alexander v. Tippah Cnty.*, 351 F.3d 626, 630 (5th Cir. 2003) (remedies were available because inmate had knowledge of grievance

---

[4] Huff also argues that he was under the impression that BOP policy required him to wait twenty days from the answer to his informal remedy request to file a formal grievance. In fact, however, the BP-9 was required to be filed within twenty days of the incident. *See* 28 C.F.R. § 542.14. The only evidence in the record that Huff was actually confused about the administrative procedures is an Inmate Request to Staff in which Huff asked when a BP-9 needed to be filed. But this request was submitted in 2010, not in 2007, when the events at issue took place. This 2010 Inmate Request cannot be used to demonstrate Huff's confusion over the administrative procedures in 2007.

No. 12-20762

procedures); *Ferrington v. La. Dep't of Corrs.*, 315 F.3d 529, 532 (5th Cir. 2002) (remedies were available because the inmate "was well aware of the general procedural requirements described in the inmate handbook"). Moreover, Huff has not alleged that BOP officials provided him with contrary deadlines. Instead, Huff asserts in his affidavits that Lieutenant Jackson told him to delay filing a BP-9 until after Captain Fauver's investigation concluded.[5] But Huff points to only one such statement that was made within twenty days following the incident (i.e., on July 20, 2007). Huff's assertion regarding Lieutenant Jackson's statement, which is merely a reiteration of an allegation in his complaint, is insufficient to raise a fact issue regarding whether BOP officials' actions rendered his remedies unavailable, given Huff's knowledge of the grievance procedures.[6] Huff also sets forth a generalized fear of retaliation but does not allege any specific acts or threats of retaliation by any specific officers. *See Brown v. Civigenics*, 439 F. App'x 370, 371 (5th Cir. 2011) (unpublished) (concluding that a generalized fear of retaliation does not amount to an excuse in light of the Fifth Circuit's "strict approach to the exhaustion requirement"). The district court was also correct to conclude that this conclusory assertion regarding the fear of retaliation was insufficient, without more, to require a trial on the *Bivens* claims. Viewing the record in the light most favorable to Huff, there is no genuine issue of material fact as to whether Huff was excused from the exhaustion requirement.

---

[5] To the extent that Huff also argues, based on Lieutenant Jackson's statement, that promissory and equitable estoppel should excuse his untimely exhaustion, we consider this to be subsumed by the broader excuse-from-exhaustion argument, which we ultimately reject.

[6] Relying on *Dillon*, 596 F.3d 260, Huff argues that his remedies were unavailable. However, in *Dillon*, there was a lack of evidence as to what the inmate knew or "could have discovered" about the relevant deadlines. *Id.* at 269. Here, by contrast, the record reflects that Huff could have discovered when a BP-9 was due.

No. 12-20762

Huff argues a number of other reasons as to why he should be excused from the exhaustion requirement, but each is unavailing.  Huff contends that the exhaustion requirement should be excused because the prison failed to adhere to its own policy requiring the Remedy Coordinator to be flexible and accept untimely informal resolution requests.  However, the facility's policy did not require prison officials to accept an untimely submission, only that "consideration should be given."  Huff also argues that administrative remedies were rendered unavailable because his injuries prevented him from filing a timely request.  We have held that an inmate's "personal inability" may render a grievance system "unavailable" for purposes of the exhaustion requirement.  *Days*, 322 F.3d at 867.  Although Huff alleges in his complaint, more definite statement, and compendium that he sustained injuries as a result of the Pistoleros' attack, his summary judgment evidence went only to the nature of his injuries and did not demonstrate that his injuries prevented him from properly exhausting administrative remedies.  These conclusory allegations cannot satisfy Huff's summary judgment burden.

III.

A.

Huff also challenges the dismissal of his failure to protect claim under the FTCA.  We review *de novo* a district court's dismissal under Rule 12(b)(1).  *In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 251 (5th Cir. 2006).  Under Rule 12(b)(1), a case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case.  *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).  Courts may dismiss for lack of subject matter jurisdiction based on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint, supplemented by undisputed facts, plus the court's resolution of disputed facts.  *Clark v. Tarrant*

11

No. 12-20762

*County*, 798 F.2d 736, 741 (5th Cir. 1986).  When subject matter jurisdiction is challenged, the plaintiff has the burden of demonstrating that subject matter jurisdiction exists.  *Paterson v. Weinburger*, 644 F.2d 521, 523 (5th Cir. 1981).

B.

As the sovereign, the United States is immune from suit, except to the extent that it has waived its immunity and has consented to be sued.  *F.D.I.C. v. Meyer*, 510 U.S. 471 (1994).  The FTCA acts as a limited waiver of sovereign immunity allowing the United States to be sued for "injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. § 1346(b); *see United States v. Muniz*, 374 U.S. 150, 151 (1963) (confirming the right of a federal prisoner to sue under the FTCA for injuries received during incarceration).  Courts strictly construe waivers of sovereign immunity and resolve all ambiguities in favor of the sovereign.  *Lane v. Pena*, 518 U.S. 187, 192 (1996).  Under the discretionary function exception, the waiver of immunity does not apply to any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a); *see Guile v. United States*, 422 F.3d 221, 229 (5th Cir. 2005).  Huff has the burden of proving subject matter jurisdiction by alleging a claim that was facially outside the discretionary function exception.  *See St. Tammany Parish ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009).

To determine whether the discretionary function exception applies, we conduct a two-pronged inquiry.  *United States v. Gaubert*, 499 U.S. 315, 322 (1991); *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 713 F.3d 807, 810 (5th Cir. 2013).  We ask first whether the challenged act "involv[ed] an element of judgment or choice."  *Gaubert*, 499 U.S. at 322 (internal quotation

marks and citation omitted). If so, we ask next "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id.* at 322–23 (internal quotation marks and citation omitted). The exception "protects only governmental actions and decisions based on considerations of public policy." *Id.* at 323 (internal quotation marks and citation omitted).

The district court applied the *Gaubert* test and concluded that the discretionary function exception applied because the BOP exercises "significant judgment in fulfilling its statutory obligation to provide for the safekeeping" of inmates and that the discretionary safekeeping of inmates was the type of action for which the FTCA was designed to shield the government from liability.[7]

Huff complains that Lieutenant Neal's "open investigation procedure" portrayed him as a snitch and that Captain Fauver disregarded his health and safety by placing two Pistoleros into his housing unit. Huff contends that the district court erred when it applied the discretionary function exception because, under 18 U.S.C. § 4042(a), the BOP shall "provide suitable quarters and provide for the safekeeping, care, and subsistence" of those in its charge, the defendants' obligation to protect him from harm was statutory, rather than discretionary. Citing *Castro v. United States*, 560 F.3d 381 (5th Cir. 2009), *vacated*, *Castro v. United States*, 608 F.3d 266 (5th Cir. 2010) (*en banc*), Huff argues that the defendants did not possess the discretion to violate his Eighth Amendment right against cruel and unusual punishment. Huff's reliance on *Castro* is misplaced because that case has since been overturned by the *en banc*

---

[7] Huff argues that the district court erred by considering the jurisdictional question *sua sponte*. We disagree. The district court was obliged to undertake an analysis of the applicability of the discretionary function exception and dismiss this action for lack of subject matter jurisdiction under Rule 12(b)(1).

court. *Castro*, 608 F.3d 266. Huff provides little analysis of this argument and does not cite any case besides the overturned opinion in *Castro*. Though *pro se* litigants' briefs are liberally construed, *pro se* litigants must still brief the issues. *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995). Therefore, Huff has waived the issue by failing to brief it adequately. *United States v. Scoggins*, 599 F.3d 433, 446 (5th Cir. 2010) ("A party that asserts an argument on appeal, but fails to adequately brief it, is deemed to have waived it." (citations omitted)).

The discretionary function exception "does not apply if 'a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.'" *Buchanan v. United States*, 915 F.2d 969, 971 (5th Cir. 1990) (quoting *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). Although § 4042 mandates that the BOP ensure the safekeeping of inmates, the Supreme Court has observed that a prison's internal security is normally left to the discretion of prison administrators. *Whitley v. Albers*, 475 U.S. 312, 321–22 (1986) ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." (internal quotation marks omitted)). In addition, we have stated that the BOP must "provide for the safekeeping, care, and subsistence of all federal prisoners, but [§ 4042(a)] does not indicate the manner in which the duty must be fulfilled." *Spotts v. United States*, 613 F.3d 559, 567 (5th Cir. 2010). In other words, because § 4042 does not prescribe a specific course of action, the BOP has discretion to decide how best to fulfill its duty.[8]

---

[8] Huff argues that BOP policy provides specific courses of actions that BOP employees must follow in order to fulfill their duty under § 4042(a), but he has not pointed to a rule,

No. 12-20762

Because the duty to maintain safekeeping of inmates is a discretionary one, we now turn to the two-pronged inquiry for the discretionary function exception. The placement of Pistoleros in a particular unit of the prison and the investigation of alleged threats inside the prison "involv[ed] an element of judgment or choice," thereby satisfying the first prong. *Gaubert*, 499 U.S. at 322. Indeed, the placement of any inmates on any occasion, as well as the investigation of any internal issue at any time, inherently requires that prison officials exercise their discretion to make a choice regarding the proper course of action in furtherance of safekeeping. Moreover, this is the type of conduct that the discretionary function was designed to shield because "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators." *Buchanan*, 915 F.2d at 971 (internal quotation marks omitted). Public policy demands that these decisions be made by prison officials, not judges. Therefore, the BOP officials' actions in this case fell within the discretionary function exception. [9] Our conclusion comports with a recent unpublished opinion in which we held that "decisions regarding the transfers and classifications of prisoners generally fall within the discretionary function exception." *Patel v. United States*, 398 F. App'x 22, 29 (5th Cir. 2010) (unpublished).

Huff raises a series of other issues that are meritless. He argues that the district court erred when it denied his motion for leave to amend his complaint after the defendants filed their motion to dismiss his FTCA claims.

---

regulation, or policy statement showing that the defendants lacked discretion in handling his placement. The BOP has discretion within the bounds of § 4042.

[9] Regardless of whether Huff purports to rely on a negligence theory or intentional-tort theory, the conduct underlying Huff's FTCA claims falls within the discretionary function exception. The exception does not depend on the inmate-plaintiff's theory. *See Patel*, 398 F. App'x at 29 (citing *Gaubert*, 499 U.S. at 322) (applying discretionary function exception to bar plaintiff's claim that BOP officials acted "either negligently or deliberately" in transferring plaintiff to facility without capacity to treat plaintiff's medical conditions).

Futility of amendment is a permissible basis for denial of a motion to amend. *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 391 (5th Cir. 2005). Because the court lacks subject matter jurisdiction over Huff's FTCA claims, amendment to his complaint would have been futile. Likewise, Huff argues that the district court erred when it denied an opportunity for discovery on the jurisdictional issues that were intertwined with his FTCA claims. A district court's decision to delay summary judgment for further discovery is reviewed for an abuse of discretion. *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010). Huff has not indicated how any fact he hopes to discover would show that the district court's determination on the jurisdiction issue was erroneous. We have stated that a nonmovant "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *Id.* Therefore, the district court's denial of Huff's motion for an evidentiary hearing was not erroneous.

In addition, Huff argues that his due process rights were violated when the district court denied his motion to reconsider the dismissal of his FTCA claims and his motion to amend. "We review the district court's denial of a motion for reconsideration under an abuse of discretion standard." *Ramon v. Casellas*, 165 F.3d 23, *1 (5th Cir. 1998) (unpublished). Huff has not provided grounds for relief from the judgment. The district court therefore did not abuse its discretion.

Finally, Huff argues that he district court abused its discretion when it denied his motion for the appointment of counsel without an analysis of the relevant factors. Huff had no automatic right to counsel and the district court was required to appoint counsel only if the case presented exceptional circumstances. *Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982). Although there is no comprehensive definition of exceptional circumstances is practical, we have stated that a number of factors should be considered in ruling on requests for appointed counsel. These include: (1) the type and

complexity of the case; (2) whether the indigent is capable of adequately presenting his case; (3) whether the indigent is in a position to investigate adequately the case; and (4) whether the evidence will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross-examination. *Id.* at 213. Huff filed thorough pleadings and responses to the defendants' motions that adequately addressed the complexities of the case. Therefore, the district court did not abuse its discretion in denying Huff's motion for the appointment of counsel.

We AFFIRM.